IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

ROBERT L. JOHNS,
Bankruptcy Trustee,

      Plaintiff,

v.                        CIVIL ACTION NO. 1:22-cv-00312

PAUL J. HARRIS,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Two motions are pending before the court:  (1) plaintiff's motion to dismiss defendant's counterclaim (ECF No. 29) and (2) defendant's motion to amend his counterclaim to add an additional claim (ECF No. 31).  For the reasons explained below, plaintiff's motion to dismiss is **GRANTED,** and defendant's motion for leave to amend is **DENIED.**

### I.   Background

This case arises from alleged legal malpractice by defendant Paul J. Harris in his representation of Randy Michael Brodnik, D.O. in a civil case in the Circuit Court of Mercer County, West Virginia.  (See Compl. at ¶ 1, ECF No. 1).  The trustee of Dr. Brodnik's bankruptcy estate has assumed his claims against Mr. Harris and is now the plaintiff in this

matter. (See Order, ECF No. 61) (substituting bankruptcy trustee as real party in interest).

In March 2009, Dr. Brodnik was indicted in the United States District Court for the Southern District of West Virginia for six counts of tax evasion and one count of conspiracy. See Brodnik v. Stientjes, No. 17-1107, 2020 WL 4355062, at *1 (W. Va. July 30, 2020) (memorandum decision). Three attorneys represented Dr. Brodnik in his defense against those charges: Anthony Gasaway, Robert Stientjes, and Michael Gibson. See id. at *2. Following a three-week trial, Dr. Brodnik was acquitted of all charges. See id. Despite the acquittal, Dr. Brodnik refused to pay the more than $650,000 in attorney fees and expenses that he owed, arguing that his lawyers committed legal malpractice. See id.

In addition to refusing to pay his outstanding legal fees, Dr. Brodnik demanded a refund of $21,989 held in Mr. Stientjes's client trust account. See id. That is where Mr. Harris entered the picture.

Dr. Brodnik retained Mr. Harris to represent him in his effort to recover the funds held in Mr. Stientjes's trust account. (See Compl. at ¶ 12, ECF No. 1). Mr. Harris filed suit against Mr. Stientjes in the Circuit Court of Mercer County on Dr. Brodnik's behalf on July 19, 2012, and demanded the funds be released to Dr. Brodnik. See Brodnik, No. 17-1107, 2020 WL

4355062, at *2.  In response, Mr. Stientjes filed a counterclaim, and Mr. Gasaway and Mr. Gibson filed intervening complaints, each demanding payment of the attorney fees and expenses that Dr. Brodnik owed.  See id.  Dr. Brodnik then filed counterclaims against all three attorneys for alleged legal malpractice.  See id.

However, during those proceedings, Mr. Harris, as Dr. Brodnik's counsel, willfully "failed to comply with the West Virginia Rules of Civil Procedure [and] the orders of the court."  See id. at *3.  Although Mr. Harris blamed his misconduct on the pregnancy of an associate in his law firm, the circuit court rejected that argument, and as a sanction, entered default judgment against Dr. Brodnik on Mr. Stientjes's, Mr. Gasaway's, and Mr. Gibson's claims for payment of the attorney fees and expenses.  See id. at *3.  The circuit court also granted summary judgment against Dr. Brodnik on his counterclaims, finding that Mr. Stientjes, Mr. Gasaway, and Mr. Gibson did not commit legal malpractice during their representation of Dr. Brodnik in the underlying criminal proceedings.  See id.

Mr. Harris appealed the circuit court's orders and represented Dr. Brodnik on appeal.  See id. at *1.  Both orders were affirmed by the Supreme Court of Appeals of West Virginia.  See id. at *6.  However, plaintiff alleges that Mr. Harris

3

informed Dr. Brodnik of neither the circuit court's orders nor the appeal, and that Dr. Brodnik only learned of those events after "monies were suddenly seized from his account(s) by the [a]ttorneys as part of their collection efforts" on the default judgment order. (See Compl. at ¶¶ 25-26, ECF No. 1). Plaintiff alleges that these collection efforts caused Dr. Brodnik to file for Chapter 7 bankruptcy. (See id. at ¶ 27). Mr. Harris filed the bankruptcy petition on Dr. Brodnik's behalf and represented him for a portion of those proceedings. Dr. Brodnik received a discharge of all pre-bankruptcy-petition debts and is no longer represented by Mr. Harris.

Following the bankruptcy discharge, Dr. Brodnik filed this this lawsuit against Mr. Harris, asserting claims of legal malpractice and breach of contract related to his representation of Dr. Brodnik in the case against his former attorneys. (See id. Counts I-II). Mr. Harris filed this counterclaim alleging "a *quantum meruit* claim for services rendered that were not expressly provided for in the written agreement between the parties[,]" namely his representation of Dr. Brodnik on appeal to the Supreme Court of Appeals of West Virginia. (See Def.'s Countercl. at ¶¶ 52-53, ECF No. 26).

Plaintiff moves to dismiss Mr. Harris's counterclaim, arguing that any debt he owed to Mr. Harris for his representation on appeal accrued prior to Dr. Brodnik filing for

bankruptcy and was therefore discharged in the bankruptcy. (See Pl.'s Mem. Supp. Mot. Dismiss at 3-4, ECF No. 30). In support of this argument, plaintiff notes that Mr. Harris filed Dr. Brodnik's appeal on December 14, 2017, and filed his opening brief on March 19, 2018, several months before Dr. Brodnik's bankruptcy petition was filed on May 31, 2018. (See id.).

Mr. Harris does not contest this timeline of events. Rather, he argues that "the West Virginia Supreme Court entered its Order in the underlying matter on July 30, 2020[,] *after* the bankruptcy was filed. In other words, work continued to be done after the bankruptcy was filed." (Def.' Resp. at ¶ 6, ECF No. 31). In addition to opposing plaintiff's motion to dismiss, Mr. Harris moves to amend his counterclaim to add a claim against Dr. Brodnik for "abuse of process" for filing this lawsuit. (Id. at ¶ 8).

## II.  Legal Standard

"The purpose of a Rule 12(b)(6) motion is to test the [legal] sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999) (cleaned up). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (cleaned up). In other words, the complaint must "plausibly suggest an entitlement to relief." Int'l Refugee Assistance Project v. Trump, 961 F.3d 635, 648 (4th Cir. 2020) (cleaned up).

When a party seeks leave to amend a counterclaim, leave to amend should "be freely given when justice so requires[.]" Elite Entm't, Inc. v. Khela Bros. Entm't, 227 F.R.D. 444, 447 (E.D. Va. 2005) (quoting Fed. R. Civ. P. 15(a)). However, "courts have routinely held that leave to amend need not be granted when the proposed amendments are subject to dismissal, since such amendments would be futile." Paul Revere Life Ins. Co. v. Forester, 32 F. Supp.2d 352, 360 (W.D.N.C. 1998) (citing Perkins v. Silverstein, 939 F.2d 463, 472 (7th Cir. 1991)).

### III. Discussion

**A.   Harris's Counterclaim**

When a debtor is granted a discharge under Chapter 7 of the bankruptcy code, the debtor is relieved of all debts that arose before the bankruptcy petition was filed:

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether

6

> or not a claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C. § 727(b).  "The statute is unambiguous in that it 'discharges every prepetition debt, without regard to whether a proof of claim has been filed . . . [.]'" In re Bearden, 382 B.R. 911, 917 (Bankr. D.S.C. 2008) (quoting Zirnhelt v. Madaj, 149 F.3d 467, 469 (6th Cir. 1998)).  While this applies to attorney fees accrued prior to the bankruptcy petition being filed, "the fees attributable to [legal] services performed postpetition cannot be discharged under § 727(b) of the Bankruptcy Code[.]" In re Chase, 372 B.R. 133, 142 (Bankr. S.D.N.Y. 2007).

In this case, Mr. Harris seems to concede that any fees allegedly earned prior to Dr. Brodnik's bankruptcy petition were discharged in the bankruptcy.  He argues that "[i]f Plaintiff wishes to proceed with this matter, the Defendant will have no choice but to seek a revocation of the discharge and pursue his counterclaim against Plaintiff."  (Def.'s Resp. at ¶ 5, ECF No. 31).  Even so, he alleges that "work continued to be done" on Dr. Brodnik's appeal until the Supreme Court of Appeals of West Virginia issued its memorandum decision on July 30, 2020.  (See id. at ¶ 6).  However, this allegation does not plausibly allege that Dr. Brodnik is indebted to Mr. Harris for post-petition legal services rendered.

As explained above, Mr. Harris filed Dr. Brodnik's appeal and opening brief before filing Dr. Brodnik's bankruptcy petition several months later.  The appeal was then decided on the briefs without oral argument.  See Brodnik, No. 17-1107, 2020 WL 4355062, at *1.  Mr. Harris does not allege what "work" he completed while awaiting the court's decision.  His allegation is vague, conclusory, and unsubstantiated.  Therefore, the court rejects it.[1]  Mr. Harris may seek a revocation of the discharge if he wishes to collect fees or expenses he believes Dr. Brodnik may owe him.

Plaintiff's motion to dismiss (ECF No. 29) is **GRANTED**.

B. **Harris's Motion to Amend Counterclaim**

Mr. Harris requests leave to amend his counterclaim to add a claim against Dr. Brodnik for abuse of process.  (See Def.'s Resp. at ¶ 8, ECF No. 31).  "Generally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process."  Pote v. Jarrell, 412 S.E.2d 770,

---

[1] It is also questionable how Dr. Brodnik could be indebted to Mr. Harris for legal work performed on appeal.  First, by Mr. Harris's own admission, Dr. Brodnik did not contract for Mr. Harris's representation on appeal, and their retainer agreement expressly provides that "[Mr. Harris's] representation . . . does not include representation at an appeal level." (Def.'s Countercl. at ¶ 53, ECF No. 26).  Also, the appeal was from an order granting default judgment against Dr. Brodnik because of Mr. Harris's willful failure to comply with the West Virginia Rules of Civil Procedure and court orders.

774 (W. Va. 1991) (quoting Syl. Pt. 2, Wayne Cty. Bank v. Hodges, 338 S.E.2d 202 (1985)).

Here, Mr. Harris argues that Dr. Brodnik "caused process to be issued for the improper purpose of wrongfully obtaining monies owned by the bankruptcy estate." (See Def.'s Resp. at ¶ 8, ECF No. 31). This is an alleged injury to the bankruptcy estate, not Mr. Harris. Mr. Harris lacks standing to claim an injury on behalf of the bankruptcy estate: "[T]he plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical[.]" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (cleaned up).

The court should grant leave to amend "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief[.]" Kolb v. ACRA Control, Ltd., 21 F. Supp. 3d 515, 522 (D. Md. 2014) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Here, the alleged injury to the bankruptcy estate could not entitle Mr. Harris to relief. Therefore, Mr. Harris's motion to amend his counterclaim (ECF No. 31) is **DENIED**.

### IV. Conclusion

For the above reasons, plaintiff's motion to dismiss defendant's counterclaim (ECF No. 29) is **GRANTED,** and defendant's

9

motion to amend his counterclaim (ECF No. 31) is **DENIED**. The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and defendant pro se.

      **IT IS SO ORDERED** this 28th day of June, 2024.

      ENTER:

      *David A. Faber*
      David A. Faber
      Senior United States District Judge